GEORGE S. ALLEN V. THE TRAVELERS INDEMNITY CO.

May Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed October 6, 1936.

318

*Fred E. Gleason* for the plaintiff.

*Lawrence, Stafford & O'Brien* for the defendant.

MOULTON, J. This is an action of contract upon a liability insurance policy. It was tried without a jury upon an agreed

statement of facts, and concessions by both parties that certain witnesses, if present, would testify to certain facts, exceptions being taken to the materiality of the evidence. The court filed a finding of facts and rendered judgment for the defendant, and the questions before us arise on the plaintiff's exceptions. It is agreed that if the plaintiff is entitled to recover, the damages are $3,300.

Holmes, a resident of Kansas, was motoring through Vermont, when his automobile broke down, and he placed it in the hands of the plaintiff, who operated a garage in Randolph, for repairs. The trouble was such that new parts were required, which had to be ordered from the factory, and pending their arrival, Holmes went to Boston. From there he telephoned the plaintiff saying that he wanted his car delivered to him at some point in his route back to Kansas, and upon the plaintiff's suggestion, Pittsfield, Massachusetts, was selected.

Holmes told the plaintiff to send the repair bill by the man who would be driving the car, and also to tell the driver what the charge would be for the delivery, the compensation for this not being fixed, but being on the basis of time and expenses. The plaintiff did not employ a person especially to deliver motor vehicles which had been repaired by him, and on this occasion he drove the car himself to Pittsfield, placing his garage number plates over the Kansas number plates already on the car. On his way he became involved in an accident in which Mr. and Mrs. Rich were injured, and these two commenced actions against him in the United States District Court for the District of Vermont. After the accident he delivered the car to Holmes and was paid his bill for repairs and $30 plus expense for oil and gasoline, for the trip.

Holmes was insured against liability by a policy issued by the defendant company in a sum greater than the damages sought in this proceeding. The policy expressly referred to Holmes' car and covered the operation of it not only by himself, but "by any other person * * * while legally using the automobile * * * provided that such use is with the permission of the named Assured [Holmes] * * *" and "The provisions of this paragraph shall not apply, however, to any person * * * operating an automobile repair shop, public garage, sales agency or service station and arising out of the operation thereof." It also provided that "if any other Assured [than Holmes] has valid and

collectible insurance against a loss also covered by this Policy, such other Assured shall not be covered under this Policy.''

The plaintiff held a policy of liability insurance issued by the American Fidelity Company, which covered ''all work incidental and necessary to the conduct of the Assureds' business of operating automobile garage, sales agency and/or service station, including the operation of any style or make of automobile * * * for all purposes in such business * * *,'' and ''it is hereby understood and agreed that this policy is extended to cover all work incidental and necessary to the conduct of the assureds' business of operating Automobile Sales Agency, Public Garage and Automobile Repair Shop.''

Although notified of the actions brought against the plaintiff by Mr. and Mrs. Rich, the defendant refused to undertake the defense or to assume responsibility for any judgment that might be rendered therein. The plaintiff thereupon settled the claims by the payment of $3,000 and incurred an expense of $300 in so doing.

The trial court stated in its findings that the delivery of the automobile to Holmes at Pittsfield was a service arising out of the operation of a public garage or automobile repair shop by the plaintiff and was incidental thereto, and ''was also necessary in the conduct of this business if plaintiff would render to his customer, Holmes, the kind and quality of service requested by Holmes and for which service Holmes stood ready to pay and did pay the figure set by the plaintiff''; therefore that the plaintiff was not covered by the policy issued by the defendant, but was fully covered by the policy issued by the American Fidelity Company, which coverage ''was valid and collectible insurance protecting plaintiff at the time in question.''

The plaintiff conceded that Holmes, if he were present, would testify that in the course of the telephone conversation regarding the delivery of the automobile the plaintiff told him that he would assume complete responsibility, could put Vermont license plates on the car, and had complete insurance coverage; and that, after the delivery, he said that he was entirely to blame for the accident and would pay all damage. This evidence was received subject to plaintiff's exception, upon the grounds of immateriality and irrelevancy. It was also conceded that the American Fidelity Company paid the plaintiff the money with which to settle the action brought by the Riches, and the admis-

322

sion in evidence of this fact was under exception for the same reasons.

■■ The evidence of the telephone conversation cannot be said to be immaterial for reasons which we will presently notice. The reception of the evidence as to what the plaintiff said after the accident, and as to the payment by the American Fidelity Company, need not be considered. If error, it does not appear to be prejudicial since the record shows that no use was made of it. *Platt, Admr.* v. *Shields & Conant,* 96 Vt. 257, 273, 119 Atl. 520. An examination of the findings discloses no reference to the matters covered by these concessions.

■■ The plaintiff requested a finding that, at the time of the accident, the plaintiff was "legally using" the automobile within the terms and conditions of the defendant's policy, and with Holmes' permission, and excepted to the denial of this request. That he was using the car with the permission, and even by the request, of Holmes is clear from the findings as made, and an express finding to this effect was unnecessary. *Hale* v. *Windsor Savings Bank,* 90 Vt. 487, 495. He was in possession and control of the vehicle as bailee of the owner and operating it for the purpose authorized by the latter, and it follows, as a conclusion of law, that he was "legally using" it, within the meaning of the policy. It was unnecessary to state this in the findings. *Labor* v. *Carpenter,* 102 Vt. 418, 422, 148 Atl. 867. The exception is not sustained.

Several exceptions were taken to the findings that the delivery of the automobile to Holmes at Pittsfield was a service arising out of the operation of a public garage and automobile repair shop by the plaintiff and incidental thereto, and that the plaintiff was not covered by the defendant's policy, but was covered by the American Fidelity Company's policy. Exceptions were also taken to the failure to find the contrary as requested.

■ With reference to this same undertaking for delivery, we said in *Rich* v. *Holmes,* 104 Vt. 433, 438, 160 Atl. 173, that it was separate and distinct from the contract for repairs, but this does not preclude an inquiry whether it arose out of the operation of the plaintiff's garage and automobile repair shop. If it did, the plaintiff cannot prevail because he came within the exception in the policy issued by the defendant to Holmes, and was not covered by it, whether or not he had valid insurance elsewhere. The burden of proof on this issue was upon the defend-

ant. *Jacobs* v. *Loyal Protective Ins. Co.*, 97 Vt. 516, 520, 521, 124 Atl. 848.

■ No precise definition of the phrase "arising out of the operation" of a public garage or automobile repair shop can be attempted. It all depends upon the circumstances of the particular case, the nature of the transaction, its connection with the business, and whether it can be said to be a natural and necessary incident or consequence of the operation, though not foreseen or expected. See *Brown* v. *Bristol Last Block Co.*, 94 Vt. 123, 125, 108 Atl. 922.

■ ■ A local delivery of automobiles after having been repaired may well be said to arise out of the repair business; and the fact that it is to be made at a distance does not necessarily lead to an opposite conclusion. It was, as the court found, the understanding of the plaintiff and Holmes that the car should be driven by the former or by one of his employees. The fact that he employed no person especially to deliver repaired automobiles is susceptible of an inference that this service was sometimes rendered. The use of the garage license plates (although prohibited under P. L. 5082 and 5087) and the evidence of the statement made by the plaintiff in his telephone conversation with Holmes tended to show that the delivery was undertaken as something connected with the operation of the business, and arising out of it. The finding of the court to this effect was warranted, and it is therefore unnecessary to consider whether the plaintiff was covered by the policy issued by the American Fidelity Company.

*Judgment affirmed.*