Darla Jean POSE, Administrator of the Estate of Robert Lee Pose, Jr. et al., Appellants,

v.

ROOSEVELT HOTEL COMPANY, and First Avenue Company, Appellees.

No. 55258.

Supreme Court of Iowa.

May 23, 1973.

an adverse jury verdict in a law action instituted to recover damages under the provisions of the Iowa Dramshop Act, section 123.95, The Code, 1966.

This litigation is a consequence of an automobile accident which occurred about 7:20 a. m. October 3, 1969, on U. S. Highway 30 approximately 12 miles west of Cedar Rapids. An automobile being operated by Dean Zillman in which Robert Lee Pose, Jr., was a passenger was struck by an oncoming automobile being driven by Donald Lee Williams. Pose received injuries from which he died September 29, 1970.

Darla Jean Pose, the surviving spouse of Robert Lee Pose, Jr., alleged in four separate divisions of plaintiffs' petition a cause of action as administrator of his estate, as conservator for their two minor children and in her individual capacity. Recovery is demanded against defendants in each division on the theory they sold or gave beer or intoxicating liquor to Donald Lee Williams while he was intoxicated, or served beer or intoxicating liquor to him to a point where Williams was intoxicated and remained intoxicated until the time of the collision referred to.

Section 123.95 upon which plaintiffs rely for a right of action provided:

"Civil liability applicable to sale or gift of beer or intoxicants by licensees. Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly against any licensee or permittee who shall sell or give any beer or intoxicating liquor to any such person while he is intoxicated, or serve any such person to a point where such person is intoxicated for all damages actually sustained.

"Every liquor control licensee shall furnish proof of financial responsibility either by the existence of a liability insurance

Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellants.

Simmons, Perrine, Albright & Ellwood, and Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, for appellees.

MASON, Justice.

This is an appeal by plaintiffs from a judgment entered against them following

policy or by posting bond in such amount as determined by the commission." (Now section 123.92, The Code, 1973).

The record discloses that on October 1, 1969, Donald Williams, Gary Grant and Roger Hornsby met at a local Cedar Rapids bar about 9:30 p. m., each having an unknown amount of alcoholic beverages. They returned to their motel rooms at an Iowa City Holiday Inn about 2:30 a. m. October 2; they awakened about 7:00 a. m. that morning to begin their mutual work of selling encyclopedias.

Approximately 6:30 p. m. October 2 Williams and Grant met at The Stables bar in the Magnas Hotel in Cedar Rapids. Hornsby arrived a half hour later. Although Grant and Hornsby left The Stables bar on two occasions, Williams remained and apparently drank a minimum of five bottles of beer.

About 9:30 p. m. October 2 Grant and Hornsby met Williams at the Piccadilly Tavern in the defendant-Hotel Roosevelt. There, a woman who was an acquaintance of both Williams and Grant, had joined Williams, who was drinking a mixed drink. While at the Piccadilly Tavern Grant observed Williams have a minimum of seven mixed drinks.

At midnight Grant left the Tavern, purchased two six packs of beer and returned to the Cedar Rapids Holiday Inn, where Williams had reserved a room for the two men. As prearranged Williams and the woman were in the room when Grant arrived. Grant and Williams had sexual relations with her before she left the motel room at about 4:00 a. m. October 3. Williams had no more than one hour of sleep that night; the men drank none of the beer purchased by Grant.

Williams woke Grant at approximately 6:00 a. m. the morning of October 3 and informed Grant he was going to drive to Ames; before leaving Williams took a diet pill. Grant last saw Williams about 7:00 a. m. as he drove away from the Holiday

Inn. The collision occurred about 20 minutes later.

Plaintiffs' motion for new trial following the jury verdict for defendants was overruled.

Plaintiffs' five assignments of error relied on for reversal are directed to instructions given as well as to the court's failure to give requested instructions, arguments of counsel and the court's rulings in regard thereto. These assignments will be stated in greater detail as hereinafter considered.

I. In their first assignment plaintiffs contend the court erred in giving instructions 4, 5 and 7 to which they objected and in failing to give their proposed instructions 1 and 2A for the reason the court's instructions required plaintiffs to prove the alcohol served Williams by defendants was a proximate cause of his intoxication at the time of the collision.

■ Plaintiffs question the propriety of subsection 5 of instruction 4, instructions 5 and 7. At the outset we note the general rule that all instructions must be considered together and related to each other. Leaders v. Dreher, 169 N.W.2d 570, 577 (Iowa 1969).

We set out the relevant portions of the instructions challenged:

Instruction 4. " * * * 5. That the beer or intoxicating liquor sold or given Donald Lee Williams by Defendants was a proximate cause of his intoxication."

Instruction 5. "One of the elements which Plaintiffs must prove by a preponderance of the evidence is that the beer or intoxicating liquor sold or given to Donald Lee Williams by Defendants *was a proximate cause of his intoxication at the time of the accident* in question.

"In this connection you are further instructed that it need not be shown that said beer or intoxicating liquor was the sole proximate cause of the intoxication. It is enough if it is shown that it was a sub-

stantial cooperating, concurring or contributing cause to said intoxication. If such beer or intoxicating liquor substantially combined or concurred with other beer, intoxicating liquor or drugs later consumed by Donald Lee Williams to cause the continuance of an intoxicated condition until the time of the accident, then the defendants would be legally responsible for all the consequences of such condition.

"However, if you find that Donald Lee Williams was not intoxicated at the time of the accident, or if you find that the beer or intoxicating liquor sold or given to him by defendants was not a proximate cause of his intoxication at the time of the accident, as explained to you in these instructions, then there would be no liability on the part of the Defendants in this case." (Emphasis supplied)

Instruction 7. "By 'proximate cause' is meant a moving or producing cause, and an act is the proximate cause of a condition or injury sustained only when it appears that if it had not been for such act the said condition would not have been brought about or the injury sustained."

Plaintiffs further contend the court erred in refusing to give their requested instructions 1 and 2A.

Timely objections were filed by plaintiffs to each of the above instructions. Defendants assert in their brief that plaintiffs' objections to instructions 4 and 5 lack the necessary specificity, are contradictory and fail to point out wherein the instructions are incorrect so that the court could have corrected them. Defendants further contend plaintiffs never objected to the inclusion of causation of intoxication as an element to be proven by plaintiffs in order to recover damages under the dramshop act.

Instruction 4 sets forth in six paragraphs the propositions plaintiffs must prove by a preponderance of the evidence to recover under the dramshop act. Plaintiffs' objection to this instruction begins,

"Comes now the plaintiff and objects to the Court's instruction No. 4 as proposed and to the failure of the court to instruct as contained in * * * requested instruction 1 * * * for the following reasons * * *."

Then follows a detailed statement of the grounds urged in the trial court as an objection to the instruction.

A fair reading of the first portion of what may be designated as the third paragraph is in essence an approval of instruction 5 insofar as it permits the jury to find defendants responsible even though the beer or liquor served by defendants to Williams had oxidized or metabolized between the time of the last beer or liquor served to him by defendants and the collision.

Following the foregoing portion of the third paragraph of their objection to instruction 4 plaintiffs continue in this language: "[B]ut it fails to take into account the law that defendants are responsible for all of the actions and errors in judgment of Donald Lee Williams or any other person whom they serve beer or intoxicating liquor to while intoxicated or to a point where such person becomes intoxicated, and that if defendants place a person in such a condition or commit the acts described in the Dram Shop Act or the Dram Shop Law, they are responsible for all of the errors and mistakes in judgment of such a person following his departure including his error or mistake in judgment in the process of driving or in taking drugs or other intoxicants or drugs which are intoxicants, and that if he continues in an intoxicated condition by any reason uninterrupted like between the time of his last service—between the time he was last served by the defendants and the time of the collision or event complained of."

In the remaining portion of the objection plaintiffs assert what appears to be a complete contradiction of the first portion of the objection mentioned supra. Stated otherwise, plaintiffs first say the court properly states defendants would be liable even

though the beer or intoxicating liquor served by defendants to Williams had oxidized or metabolized between the time of the last beer or liquor served to him by defendants and the collision, but in the last portion of the objection plaintiffs insist the court erred in that the instruction could be read to mean defendants would not be liable if the beer or liquor they served had metabolized prior to the collision.

Insofar as plaintiffs' attack on instruction 4 standing alone is concerned they must rely on the quoted portion of their objection set out herein as being sufficient to alert the trial court to the fact they contend inclusion of causation of intoxication as an element to be proven by them in order to recover damages under section 123.-95 was error. It cannot be logically argued that the contradictory portions of the objection can serve this purpose.

█ Of course, there is an additional problem since plaintiffs never expressly directed the court's attention to subparagraph 5 of instruction 4 or to the language, "that the beer or the intoxicating liquor sold or given Donald Lee Williams by defendants was a proximate cause of his intoxication." Where an instruction consists of several distinct and separate propositions, an objection to the entire instruction is not well taken if one of such propositions is correctly stated. Stewart v. Hilton, 247 Iowa 988, 994, 77 N.W.2d 637, 641. At no time do plaintiffs contend the entire instruction was erroneous, only a part of it.

As pointed out, instruction 5 repeats the requirement stated in subparagraph 5 of instruction 4 that plaintiffs must prove "the beer or intoxicating liquor sold or given Donald Lee Williams by defendants was a proximate cause of his intoxication at the time of the accident in question."

It further instructs the jury that "if such beer or intoxicating liquor substantially combined or concurred with other beer, intoxicating liquor or drugs later consumed by Donald Lee Williams to cause a continuance of an intoxicated condition until the time of the accident, then the defendants would be legally responsible for all the consequences of such condition."

The court did not, however, instruct the jury that defendants would be liable if the liquor sold to Williams by them substantially combined or concurred with "other bodily conditions or infirmities, including [the] fatigue" of Williams to cause the continuance of an intoxicated condition at the time of the accident, as requested by plaintiffs in their proposed instruction 2A.

Plaintiffs objected to instruction 5 and the court's failure to give their requested instructions 1 and 2A for all the reasons urged in plaintiffs' objection to instruction 4 and for the further reason that "it fails to state that the bodily condition or infirmity, if any, of Donald Lee Williams can combine and concur with beer or intoxicating liquor served by the defendants, or beer, intoxicating liquors or drugs later consumed by him to continue him in an intoxicated condition.

"Further, * * * that it could be interpreted to mean that there must remain within the blood of Donald Lee Williams at the time of the collision intoxicating liquor or beer sold or given to him by the defendants and does not take into account the fact that defendants would nevertheless be liable for a continuous state of intoxication even though the intoxication was caused by beer, liquor or intoxicating drugs or bodily condition or infirmity, and that said beer, liquor or intoxicating drugs were consumed by him after the last beer or intoxicating liquor served to him by defendants."

It would seem this objection to instruction 5 neither asserts nor implies that the instruction raises a false issue, that issue being whether the alcohol sold to Williams by defendants was a proximate cause of his intoxication at the time of the collision. It does not suggest the proposition defendants' alcohol was a proximate cause of

Williams' intoxication is not an element to be proven by plaintiffs if they are to recover in an action brought under section 123.95.

Rather, plaintiffs objected to instruction 5 as being a misstatement of the principle of causation of Williams' intoxication. That is, plaintiffs contend the instruction, as proposed by the court, would require the jury to find a portion of the alcohol sold Williams by defendants was in his blood at the time of the accident. This would be a strained interpretation of the court's instruction; significantly, the court instructed the jury defendants would be liable "if such beer or intoxicating liquor substantially combined or concurred with other beer, intoxicating liquors or drugs later consumed by Donald Lee Williams to cause the continuance of an intoxicated condition until the time of the accident * * *." This portion of instruction 5 would permit the jury to hold defendants responsible for the consequence of Williams' intoxication without a finding that some of defendants' alcohol affected him at the time of the collision.

■ Of course, only the matter objected to before the instructions are read to the jury and the particular grounds for the objection(s) are to be considered by this court.

Rule 196, Rules of Civil Procedure, provides in pertinent part:

"* * * [A]ll objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal. * * *."

■ This rule directs, in part, that all objections to instructions must specify the objectionable matter, on what grounds and none other will thereafter be considered. It is incumbent on the objecting party to point out wherein he contends the instruction is wrong so the trial court may have opportunity to correct it.

The rule (R.C.P. 196) is just as definite in requiring objections to the refusal of requested instructions to specify the grounds thereof as is required of objections to instructions actually given.

■ In determining the sufficiency of an attack on an instruction to preserve any alleged error for review in this court the criterion is whether the exception taken alerted the trial court to the error which appellant is now urging.

In support of the foregoing statements of law in whole or in part see Olson v. Truax, 250 Iowa 1040, 1050-1051, 97 N.W. 2d 900, 906-907; Schall v. Lorenzen, 166 N.W.2d 795, 797 (Iowa 1969), and State v. Hraha, 193 N.W.2d 484, 485 (Iowa 1972).

In view of defendants' contentions, the immediate problem is whether anything lodged against instructions 4, 5 and 7 at trial may be fairly said, in the light of the foregoing principles, to have been sufficient to alert the court plaintiffs were then contending it was error to require them to establish that defendants' sale or gift of beer or intoxicating liquor to Williams was a proximate cause of his intoxication at the time of the collision.

Neither plaintiffs' requested instruction 1 nor 2A aid them in meeting defendants' contention the grounds urged in plaintiffs' first assignment in this court were not advanced at trial.

As pointed out, plaintiffs' reliance on their objection to instruction 4 must be limited to the quoted portion of their objection set out herein and even this is met by an obstacle—the principle of law stated in Stewart v. Hilton, 247 Iowa at 994, 77 N.W.2d at 641.

Plaintiffs objected to instruction 7 and the court's failure to give their requested instruction 3 "for the reason that it does not state that a proximate cause includes

within the definition an act or omission which is the proximate cause of the condition or injury sustained only when it appears that it is a substantial factor in bringing about the harm * * *.".

The first paragraph of plaintiffs' objection to instruction 5 seeks only a modification of paragraph two of that instruction as proposed and given by the court. Thus, whether instruction 5 is subject to review on the grounds that it erroneously requires plaintiffs to establish the cause of Williams' intoxication in order for them to recover damages against defendant under section 123.95 is contingent upon the construction given the second paragraph of plaintiffs' objection to instruction 5: "[Instruction 5] could be interpreted to mean that there must remain within the blood of Donald Lee Williams at the time of the collision intoxicating liquor or beer sold or given to him by the defendants * * *."

We have expressed the view "this would be a strained interpretation of the court's instruction," particularly in view of the court's added statement appearing in the second paragraph of instruction 5 set out, supra. Nevertheless, conceding that it could be argued that the question whether this language could be interpreted as an objection grounded on the contention causation of intoxication should not be an element of a cause of action asserted under section 123.95 is close, we prefer not to rest our decision on that basis but rather on a determination of the merits of plaintiffs' first assignment of error because of the importance of the problem.

The common law rule that an action could not be maintained against the vendor of intoxicating liquor for furnishing such beverages to a customer who, as a result of being intoxicated, injured himself or a third person has been abrogated in Iowa by the dramshop statute, section 123.95, The Code, which specifically imposes civil liability upon a furnisher of any beer or intoxicating liquor under specified circumstances.

Obviously, then, the first assigned error involves a question of statutory interpretation. The following statements concerning proof of causation of intoxication as a prerequisite to recovery under the dramshop act found in 45 Am.Jur.2d, Intoxicating Liquors, section 582, p. 872, are pertinent:

"In order to recover damages under a civil damage or dramshop act, after having proved the sale or gift of liquor by the defendant, or on his premises, with his consent, the plaintiff must show that the gift or sale was a cause of the intoxication of the person to whom the liquor was thus furnished, although it need not be shown that it was the sole cause of the intoxication; it is enough if it is shown that it was a co-operating, concurring, or proximately contributing cause. In other words, mere contribution to the intoxication is sufficient to support recovery although the intoxication was due in part to liquor furnished by persons other than the defendant. * . * *."

Authority for this language includes McCoy v. Spalding, 41 Ill.App.2d 292, 190 N.E.2d 483; Mason v. Lovins, 24 Mich. App. 101, 180 N.W.2d 73 (cited by plaintiffs), and Hahn v. City of Ortonville, 238 Minn. 426, 57 N.W.2d 254 (cited by defendants).

But the requirement of such proof will depend upon the terms of the operative statute:

"Under a dramshop act providing for a right of action against those persons *who merely sell liquor to intoxicated persons,* there need be no proof that the sale of liquor produced or contributed to the intoxication of the person to whom it was sold." (Emphasis supplied). 45 Am.Jur.2d, Intoxicating Liquors, section 582, p. 873. Lavieri v. Ulysses, 149 Conn. 396, 180 A.2d 632 and Pierce v. Albanese, 144 Conn. 241, 129 A.2d 606 (relied upon by plaintiffs) are cited as support for this statement.

Plaintiffs argue the Connecticut, Michigan and Iowa dramshop acts are alike, and,

therefore, the cases of *Pierce*, supra, and *Mason*, supra, support their contention the trial court erred in requiring proof the alcohol served Williams by defendants was a proximate cause of his intoxication at the time of the collision.

The relevant part of the Connecticut Dramshop Act reads as follows:

"Section 30–102. Liquor seller liable for damage by intoxicated person. If any person, by himself or his agent, *sells any alcoholic liquor to an intoxicated person,* and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured * * * to be recovered in an action under this section. * * *." (Emphasis supplied). *See* Nolan v. Morelli, 154 Conn. 432, 226 A.2d 383, 385, then section 4307 of the Connecticut Code. In Pierce v. Albanese, 144 Conn. at 251–254, 129 A. 2d at 613–614, the appellant charged this statute was unconstitutional unless the court construed it so as to require proof of a causal relation between the sale of intoxicating liquor and the intoxication which caused the plaintiff's injury. However, the court found this language of the statute "clear and unequivocal": "It is true that the delict contemplated by § 4307 is the sale of intoxicating liquor to an intoxicated person and that the statute imposes liability without proof that the alcoholic liquor thus sold caused or contributed to the intoxication in consequence of which an injury resulted. * * *

" * * * To hold that the act is unconstitutional unless it is interpreted to require proof of a causal relationship between the sale of the liquor and the intoxication in consequence of which the injury is inflicted would be to destroy in large part the remedial effect which the statute was intended to have in an almost infinite variety of situations. * * *

" * * *

"The statute does not require proof that the sale of intoxicating liquor produced or contributed to the intoxication of the person to whom it was sold. * * * The statute, however, does require proof that the injuries complained of were in consequence of the intoxication of the person to whom the liquor was sold." *Accord*, Nolan v. Morelli, 154 Conn. 432, 226 A.2d 383; Roberts v. Casey, 4 Conn.Cir. 89, 225 A.2d 836 (Proof that sale was proximate cause of intoxication which caused injury is not necessary); Lavieri v. Ulysses, 149 Conn. 396, 180 A.2d 632 (Proof that the sale of alcoholic liquor to an individual while he was intoxicated was a proximate cause of the intoxication which caused the injury was not necessary).

The comparable Michigan statute reads in part:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, * * *." M.C.L.A. section 436.22 (Stat.Ann.1970 Cum.Supp. section 18.993).

Under this statute, a plaintiff has the burden of establishing that "the defendant tavern sold intoxicating beverages to a person who, at the time of sale, was already intoxicated, and *that there is a causal connection between the unlawful sale and the injuries for which the plaintiff seeks to recover."* (Emphasis supplied). Mason v. Lovins, 24 Mich.App. at 106, 180 N.W.2d at 75. Contrary to plaintiffs' belief, *Mason*, as well as Wyatt v. Chosay, 330 Mich. 661, 48 N.W.2d 195 and Davis v. Terrien, 364 Mich. 82, 110 N.W.2d 754, which are cited by defendants, does require proof of

causation of intoxication as an element in an action brought under the Michigan Dramshop statute:

"Under the dramshop act, a tavern which, by an unlawful sale, 'contributes' to a particular intoxication is liable for damages caused during that intoxication by the intoxicated person. Accordingly, even if Lovins would not have remained intoxicated at the time of the accident but for the drinks he consumed after he left the tavern, the liability of the tavern continues as long as there was no break in the intoxication between the time preceding the illegal sale through the time of the accident." Mason v. Lovins, 24 Mich.App. at 114, 180 N.W.2d at 80.

In further support of their contention the trial court properly required the jury to find the sale of alcohol to Williams by defendants was a proximate cause of Williams' intoxication at the time of the accident, defendants refer to the interpretation given the Minnesota Dramshop Act, which reads in part as follows:

"Every * * * person who is injured in person or property * * * by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling * * * intoxicating liquors, caused the intoxication of such person, for all damages sustained * * *." Minn. St.1965, section 340.95 (quoted from Trail v. Village of Elk River, 286 Minn. 380, 175 N.W.2d 916, 919.)

Having asserted that a plaintiff must show there was a causal connection between the illegal sale and the infliction of injuries, the court in Trail v. Village of Elk River, 286 Minn. at 390, 175 N.W.2d at 922 quoted with approval the following language from Murphy v. Hennen, 264 Minn. 457, 463, 119 N.W.2d 489, 493: " * * * We have held that intoxicants consumed as a result of illegal sales need not be the sole cause of intoxication. It is enough if such intoxicants combine with other intoxicants that may have been legally sold or furnished to be a concurring or proximately contributing cause." See Hahn v. City of Ortonville, 238 Minn. at 430–432, 57 N.W.2d at 258–259 (To establish liability under section 340.95, the liquor sold need not be the sole cause of intoxication but it is enough if it is a cooperating, concurring, or proximately contributing cause).

The Illinois statute is similar to Minnesota Civil Damage Act and provides in part:

"Every person, who shall be injured, in person or property by any intoxicated person, shall have the right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; * * *." (Quoted from Pellico v. Jackson, 70 Ill.App.2d 313, 217 N.E.2d 281, 287).

In *Pellico*, supra, the court stated: "The language of the statute is clear that to be held liable under this section, the defendant must have sold liquor which contributed to the intoxication of the person who caused the injury complained of." *Id.* 70 Ill.App.2d at 328, 217 N.E.2d at 288.

■ Plaintiffs have brought this cause of action under the provisions of chapter 123, The Code, not as a common law negligence action. Plaintiffs must then bring themselves within the terms of the statute. On the other hand, plaintiffs need not establish the causation of Williams' intoxication, and the court's instructions therefore would be erroneous unless this court construes section 123.95 as requiring plaintiffs to plead and prove liquor sold Williams by defendants was a proximate cause of his intoxication at the time of the accident.

This court has yet to consider the question whether causation of intoxication is an element which must be proven to permit recovery under the dramshop act. However, the court in Federated Mutual Imp.

& H. Ins. Co. v. Dunkelberger, Iowa, 172 N.W.2d 137 intimates that it is a prerequisite for recovery. In *Dunkelberger* this court concluded that to recover for an injury "in property" the claimant usually must prove "only a lessening of his total assets because of the intoxication of another in order to state a cause of action against the vendor of the liquor which caused the intoxication." *Id.* at 141.

The plaintiffs-liability insurers, acting as subrogees of an intoxicated driver and owner of an automobile he was driving, sought contribution and/or indemnity from defendant-Dunkelberger under the dramshop statutes (sections 123.92 and 123.95) and common law. This court reversed the trial court's ruling sustaining defendant's motion to dismiss. One ground of the motion was that the defendant's sale of liquor could not have been the proximate cause of the injuries and resulting loss for which plaintiff sought contribution and/or indemnity. While reversed for other reasons, the court discussed defendant's claim as a ground for dismissal:

"We think the petition was not subject to dismissal on this ground. As before indicated, it alleges defendant negligently and unlawfully sold liquor to Beckerdite when he was intoxicated or to a point where he became intoxicated a half hour before the collision and such sale was a proximate cause of the collision * * *.

" * * *

" * * * We are clear that if the allegations of plaintiffs' petition are taken as true the issue of *whether defendants' sale of liquor* to Beckerdite was a proximate cause of the injury to Marjorie Kroll and the death of McDermott would be for the jury." (Emphasis supplied). *Id.* at 143–144.

Unlike the Connecticut Dramshop Act, the Iowa statute provides a cause of action against a licensee or permittee who sells or gives any beer or intoxicating liquor to a person while he is intoxicated as well as against one who serves such beverages to a person to a point where the individual becomes intoxicated (causes the intoxication).

The Connecticut cases cited say under their statute proof that the sale of intoxicating liquor produced or contributed to the intoxication of the person to whom it was sold is not required, but proof that the intoxication proximately caused the injuries for which damages are sought is essential for recovery.

As we read Mason v. Lovins, 24 Mich. App. 101, 180 N.W.2d 73, the Michigan statute concerns sale of intoxicating beverages to a person who, at the time of sale, was already intoxicated. The Michigan cases previously cited are to the effect that proof is necessary that there is a causal connection between the unlawful sale (sale to a person already intoxicated) and the injuries for which plaintiffs seek to recover.

Neither the Connecticut act nor the Michigan statute supports plaintiffs' first assignment.

In subparagraph 4 of instruction 4 the court told the jury that one of the elements plaintiffs must prove by a preponderance of the evidence was "that the intoxication of Donald Lee Williams was a proximate cause of said accident and the damages sustained by plaintiffs." Although plaintiffs objected generally to instruction 4 they do not attack this subparagraph in this court. As a matter of fact, plaintiffs urged the court in subparagraph 4 of their requested instruction 1 to instruct "that the intoxication of Donald Lee Williams was a proximate cause of the injury and damage to plaintiffs."

Hence, the necessity of plaintiffs establishing a causal connection between Williams' intoxication and the collision is not in issue. Our question is the correctness of the court's instruction that the plaintiffs must prove "that the beer or intoxicating liquor sold or given to Donald Lee Wil-

liams by defendants was a proximate cause of his intoxication at the time of the accident in question."

■■ A proper construction of section 123.95 (now section 123.92, The Code, 1973) requires one seeking damages from a licensee or permittee under the provisions of this statute for injuries to person or property or means of support by any intoxicated person or resulting from the intoxication of any such person to plead and prove a causal connection between such person's intoxication at the time of the commission of the act causing such injuries and the sale or gift of beer or intoxicating liquor to him by the licensee or permittee against whom recovery is sought.

The trial court did not err in the respects urged in this assignment.

II. The question remains whether the trial court committed reversible error in submitting instruction 7 set out herein, the uniform jury instruction which defines the term "proximate cause."

Plaintiffs had requested the following instruction:

"By 'proximate cause' is meant a moving or producing cause, and an act or omission is the proximate cause of a condition or injury sustained only when it appears that it is a substantial factor in bringing about the harm."

■ Plaintiffs assert in this assignment that in accordance with instructions 5 and 7 a verdict for them would not obtain unless the jury determined that some amount of defendants' alcohol affected Williams at the time of the accident. Stated otherwise, they contend that in order to meet the burden of proximate cause as defined in the instruction given plaintiffs were required to prove a negative act; to wit, that Williams would not have been intoxicated at the time of the collision if it had not been for the alcohol served by defendants. Plaintiffs insist the only logical construction of these combined instructions is that

such alcohol served Williams by defendants had to be affecting him at the time of the collision.

In urging this contention plaintiffs once again ignore the seemingly clear import of paragraph two of instruction 5, supra. The court's instructions when read in their entirety and considered together would not have the claimed effect.

The assignment is without merit.

In this connection see Pedersen v. Kuhr, 201 N.W.2d 711, 713 (Iowa 1973), where this court approved and quoted comment (a) following section 431, Restatement, Second, Torts, which defines legal cause and Prosser on Torts, Fourth Ed., section 41, pp. 238–241, where the author expresses the view the Restatement definition of legal cause is clearly an improvement over the "but for" rule.

III. Plaintiffs' third, fourth and fifth assigned errors concern defense counsel's statements during his closing argument to the jury that "our government, the State of Iowa, also recognizes 100 milligrams is the breakoff point." Plaintiffs contend: (1) defense counsel's statement constitutes prejudicial misconduct; (2) the trial court erred in refusing to allow their counsel to respond to the statement; and (3) the court erred in failing to direct the jury to disregard counsel's statement.

The trial court rejected the following instruction requested by defendants:

"Under the laws of this state, evidence that there was, at the time the person was operating his vehicle on the highways of the State, more than 100 mgms. alcohol per c.c's of blood shall be admitted as presumptive evidence that the person was under the influence of an alcoholic beverage."

Defense counsel, in his closing argument, stated:

"Both Drs. Weland and Looker testified that 100 milligrams is a recognized breakoff point.

"Now, Mr. Ribble asked Dr. Weland a hypothetical question, and if you remember, I am sure that his answer was it might. It might. It might, in each instance. He didn't say yes. He said it might cause this; it might cause that, but he wound up on cross-examination by Mr. Elderkin as saying yes, 100 milligrams is the recognized breakoff point. It used to be 150.

"The National Safety Council, everybody says 100 milligrams. Mr. Ribble stated in his address to you this morning, 'Our government recognizes that alcohol is dangerous if taken.' Taken to excess it is, and our government, the State of Iowa, also recognizes 100 milligrams is the breakoff point."

Plaintiffs' counsel interposed no objection to his opponent's comments.

During his rebuttal argument, plaintiffs' counsel said: "Now I want to say something about the so-called breakoff point. That's a breakoff point that is used to send people to jail." Upon defense counsel's objection the court instructed the jury to disregard the remark and directed both counsel to make no further statements concerning a criminal act.

Plaintiffs' counsel did not object to the statements when made or request a mistrial; nor did he even ask for an instruction to the jury to disregard such argument. Not until his motion for new trial did he complain of the statement quoted in the initial paragraph of this division. *See* In re Estate of Springer, 252 Iowa 1220, 1233–1234, 110 N.W.2d 380, 388–389.

▇▇▇ Ordinarily, where no objection was made at trial to statements made by opposing counsel in his closing argument and counsel did not move for a mistrial due to the alleged misconduct, this court cannot consider the matter on appeal. Andrews v. Struble, 178 N.W.2d 391, 401 (Iowa 1970); Garrard v. Feild, 254 Iowa 919, 926–927, 119 N.W.2d 796, 800; Shover v. Iowa Lutheran Hospital, 252 Iowa 706,

716–717, 107 N.W.2d 85, 91; Auen v. Kluver, 250 Iowa 619, 626, 95 N.W.2d 273, 277; Hackaday v. Brackelsburg 248 Iowa 1346, 1353–1354, 85 N.W.2d 514, 518; Agans v. General Mills, Inc., 242 Iowa 978, 984–985, 48 N.W.2d 242, 245–246; Connelly v. Nolte, 237 Iowa 114, 126, 21 N.W.2d 311, 319.

The following statements appear in *Agans*, supra:

"When (or if) counsel on either side oversteps the bounds of proper argument, prompt steps should be taken by the other to make the event of record when the matter is fresh in every one's mind, and the trial court given opportunity to take whatever proper steps are possible to repair the damage without necessitating a trial anew. * * * [citing authority]

" * * *

"Counsel for defendants were apparently not disturbed by the argument when made. They might have moved promptly for a mistrial then or at the close of the argument. They elected to await the jury's decision, if indeed, they thought any serious error had been committed. Like the trial court we are powerless now to grant them relief, even assuming (a matter we do not pass on) that any real reversible error was committed." *Id.* at 984–985, 48 N.W.2d at 245–246.

On the other hand, it is equally well-established "that misconduct in argument may be so flagrantly improper and evidently prejudicial it may be a ground for new trial even though no exception was taken when the argument was made. * * * [citing authorities]." Shover v. Iowa Lutheran Hospital, 252 Iowa at 717, 107 N.W. 2d at 91.

The determinative issue, then, is whether the claimed misconduct is of that kind.

▇▇▇ Initially, plaintiffs' second and third contentions are without merit. Plaintiffs cannot allege the trial court committed reversible error in failing to direct the

jury to disregard defense counsel's statement, when the purported prejudicial error was not brought to the court's attention.

■ Defense counsel's objection to plaintiffs' attempted effort to explain "the so-called breakoff point" was sustained, and the jury was instructed to disregard the argument. The court's ruling was proper. Agans v. General Mills, Inc., 242 Iowa at 984, 48 N.W.2d at 245, ("We are not disposed to condone the practice of fighting fire with fire in closing arguments to juries. * * * Two wrongs never make right.").

■ The validity of plaintiffs' remaining contention depends on whether the purportedly improper remark of defense counsel is inherently flagrant and "evidently prejudicial" in this case.

Examination of the record convinces us the claimed misconduct here is not of that kind.

At one point in argument plaintiffs contend objections were timely made to the alleged misconduct of defendants' counsel. Assuming without deciding this is true the following statement from Rasmussen v. Thilges, 174 N.W.2d 384, 391 (Iowa 1970) disposes of the contention:

"The trial court has broad discretion in passing on the propriety of jury argument and we will not reverse unless there has been a clear abuse of such discretion. Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such misconduct. * * * [citing authorities]."

We do not believe the trial court abused its discretion or that a different result would have been probable but for the alleged misconduct.

Finding no reversible error the case is therefore—affirmed.

All Justices concur except. McCORMICK and REYNOLDSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

I respectfully dissent from Divisions I, II and the result.

The majority has elected to decide the merits of plaintiffs' contentions concerning trial court's instructions even though it expresses misgivings about the adequacy of plaintiffs' exceptions to two of them. It upholds the instructions. I think trial court erred in instructions 4, 5 and 7 and that reversible error was adequately preserved.

I. *The instructions.* The vice in all three instructions is the same. Trial court imposed a burden on plaintiffs to establish the drinks furnished Williams by defendants were a proximate cause of his intoxication at the time of the collision. I believe this inserted in the case what the majority suggests at one point is a "false issue." Trial court imposed a requirement on plaintiffs not found in the dram shop statute. In doing so it effectively nullified the statute.

In instruction 4 trial court included this requirement in the elements of plaintiffs' cause of action. In instruction 5 the court purported to explain the element. In instruction 7 it defined proximate cause in accordance with the usual uniform instruction definition.

The statute clearly does not impose an obligation upon one seeking recovery to prove the drinks served by the dram shop were a proximate cause of the intoxication which caused injury. Code § 123.92 permits recovery for injury "by any intoxicated person or resulting from the intoxication of any such person * * * against any licensee or permittee who shall sell or give any beer or intoxicating liquor to any such person while he is intoxicated, or serve any such person to a point where such person is intoxicated * * *." In order to recover a plaintiff must prove: (1) that the defendant was a licensee or permittee; (2) that he sold or gave beer or intoxicating liquor to a person while he

was intoxicated or to the point where he became intoxicated; and (3) that plaintiff was injured by such person while he was intoxicated or as a result of his intoxication. See London & Lancashire Indemnity Co. of America v. Duryea, 143 Conn. 53, 57, 119 A.2d 325, 327 (1955); McNally v. Addis, 65 Misc.2d 204, 209, 317 N.Y.S.2d 157, 164–165 (1970); cf. Iowa Uniform Jury Instruction (Civil) 15.3.

Trial court and the majority have created a new element, not provided for in the statute, apparently because in this case there was evidence from which the jury could have found all defendants' alcohol ingested by Williams was oxidized by the time of the accident. Thus, even though there was no direct evidence he drank any intoxicants after leaving defendants' tavern, the jury could have concluded from the fact alcohol was in his system at the time of the accident he must have done so. There was also evidence from which the jury could find Williams' condition at the time of the accident was influenced by fatigue and consumption of a diet pill.

Plaintiffs maintained they were still entitled to recover so long as their proof established Williams remained continuously intoxicated from the time defendants last served him liquor. This was reflected in their proposed instructions, and it is precisely this principle which is expressed in Mason v. Lovins, 24 Mich.App. 101, 114, 180 N.W.2d 73, 80 (1970):

> "Accordingly, even if Lovins would not have remained intoxicated at the time of the accident but for the drinks he consumed after he left the tavern, the liability of the tavern continues as long as there was no break in the intoxication between the time preceding the illegal sale through the time of the accident."

This principle is quoted but ignored by the majority in its attempt to distinguish *Mason* from the present case. The fact is Michigan adheres to the principle even though its statute, as observed by the majority, requires "a causal connection between the unlawful sale and the injuries for which the plaintiff seeks to recover." *Mason* demonstrates that in Michigan the causation requirement is satisfied so long as the original intoxication is not interrupted by an interval of sobriety. This is far from a requirement of proximate causation as defined in instruction 7. Trial court refused to give the proposed instructions and instead incorporated the opposite concept in plaintiffs' burden of proof. In effect plaintiffs were required to show that defendants' liquor was affecting Williams at the time of the accident and that but for such liquor he would not then have been intoxicated.

This error is revealed rather than cured by reading the instructions together. Instruction 7 includes the standard proximate cause definition. That definition is incorporated by reference in instructions 4 and 5. Nothing in instructions 4 and 5 could lead the jury to disregard it; the court tells the jury to apply it.

The majority suggests instruction 5 contains language which would permit the jury to find for plaintiffs even if it found plaintiffs did not prove Williams still had defendants' alcohol in his system at the time of the accident. I disagree. But even if that was true, instruction 7 tells the jury the opposite when it requires the jury to absolve defendants unless plaintiffs proved Williams would not have been intoxicated at the time of the accident without their liquor. "Giving an incorrect instruction is not obviated by giving a correct one on the same issue since it is impossible to tell whether the jury followed the correct guide or the incorrect one." Wheatley v. Heideman, 251 Iowa 695, 713, 102 N.W.2d 343, 354 (1960).

Trial court's mistake was to inject the concept of proximate cause in a place it does not belong. A problem of evidence should not have become the basis for introducing a new element into plaintiffs' burden of proof. The only question under the statute was whether Williams did in fact remain

intoxicated, not whether defendants' liquor caused him to remain that way. Plaintiffs' only burden in this respect was to prove the furnishing of drinks and the accident occurred during the same episode of intoxication.

The position taken by the majority is also flatly contradicted by a principle it quotes with apparent approval from 45 Am.Jur.2d Intoxicating Liquors § 582 at 873:

"Under a dramshop act providing for a right of action against those persons who merely sell liquor to intoxicated persons, there need be no proof that the sale of liquor produced or contributed to the intoxication of the person to whom it was sold."

Like Connecticut, Iowa has such a statute. Unlike the situation in Minnesota and Illinois it is not essential under our statute that the liquor cause the intoxication. The person may already be drunk. In fact, we have not yet been required to decide whether our present statute requires the drinks furnished by the dram shop must actually be consumed for there to be liability. Further, as noted by the majority, no issue is presented in this case as to whether a dram shop claimant must show the intoxication was a proximate cause of the injury for which recovery is sought. That remains an open question under our statute.

The Am.Jur. principle derives from Connecticut cases. See, e. g., Pierce v. Albanese, 144 Conn. 241, 129 A.2d 606 (1957). The Connecticut statute is indistinguishable in any material respect from our own. The principle is in keeping with the legislative policy that our dram shop statute is to be liberally construed to advance the remedy. Williams v. Klemesrud, 197 N.W.2d 614, 615 (Iowa 1972); Wendelin v. Russell, 259 Iowa 1152, 1158, 147 N.W.2d 188, 192 (1966), and citations.

The net effect of the majority's opinion is to reduce the statute to a statement of the common law under which this court held no recovery is possible in Cowman v. Hansen, 250 Iowa 358, 368, 92 N.W.2d 682, 687 (1958):

"It is true, nothing good can be expected of an intoxicated person. But to go further and call any negligent act an intoxicated person may do, after leaving a tavern, the proximate cause or the probable cause of an injury resulting from the sale of the beverage, is, as almost all courts have said, too remote."

As pointed out in *Cowman*, legislation in this field is intended to bridge the obstacles to recovery caused by common law notions of proximate causation. We observed in *Williams, supra*, 197 N.W.2d at 617:

"Dram shop statutes impose strict liability, without negligence, upon the seller. [citation] The ordinary concepts of proximate cause are not strictly applied."

In its interpretation of Code § 123.92 in this case the majority has given the Iowa statute a more restrictive interpretation than has been given any comparable statute in any other state. See annot. 64 A.L.R.2d 705 et seq. This interpretation is an unwarranted frustration of plain legislative intent.

I believe trial court erred in instructions 4, 5 and 7 insofar as they imposed on plaintiffs the burden to prove Williams' intoxication at the time of the accident was proximately caused by defendants' liquor.

II. *Preservation of error*. The majority does not question the adequacy of plaintiffs' exceptions to instruction 7. Since I believe that instruction is erroneous in its relation to instructions 4 and 5, the exceptions to instruction 7 were sufficient to preserve reversible error even under the majority opinion.

Moreover, we have said objections to instructions must be considered in light of the record as made at the close of the evidence. The test is whether under this

standard the exceptions were sufficient to alert trial court to the issue later raised on appeal. Elkader Cooperative Company v. Matt, 204 N.W.2d 873, 877 (Iowa 1973).

Here much of the evidence concerned the oxidation rate of alcohol. The defense was based in part on showing Williams at the time of the accident did not have any of the same alcohol in his system which was there when he left defendants' tavern. Plaintiffs alerted trial court to their theory by their proposed instructions, which I maintain were a correct statement of the law. Considering the exceptions taken to the instructions in this context I have no doubt trial court was alerted to the issue now raised on review.

I would reverse and remand for new trial.

REYNOLDSON, J., joins in this dissent.